# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VELMA JENKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-CV-0279-CVE-TLW |
| ) | |
| LEGEND SENIOR LIVING , LLC, and ) | |
| GREEN TREE LEGEND, LLC, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Now before the Court is Defendants' Motion for Summary Judgment and Brief in Support (Dkt. # 75). Plaintiff filed this case alleging that defendants discriminated against her because of her age, and she seeks relief under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and for wrongful termination in violation of an Oklahoma public policy (Burk tort).[1] Defendants argue that plaintiff's employment was terminated after she falsified fire drill records and the State of Oklahoma sought to impose a substantial fine on Green Tree Legend, LLC (Green Tree), and there is no evidence that plaintiff's age was the cause of her termination. Plaintiff responds that defendants' explanation for terminating her employment is pretextual, and there are genuine disputes as to material facts that preclude entry of summary judgment in defendants' favor.

---

[1] The Oklahoma Supreme Court recognized a claim for wrongful discharge in violation of an established Oklahoma public policy in Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989), and this type of claim has become known as a Burk tort. Plaintiff alleges that defendants violated the public policy of Oklahoma by engaging in age discrimination, and the Oklahoma Supreme Court has held that age discrimination is prohibited by the public policy of Oklahoma. See Saint v. Date Exchange, 145 P.3d 1037 (Okla. 2006).

**I.**

Velma Jenkins was hired as the Residence Director for Green Tree in November 2006, and she was 62 years old at the time she was hired. Green Tree is an assisted living facility, and Legend Senior Living, LLC (Legend) is a management company that oversees several senior living facilities, including Green Tree. Tim Buchanan is the owner of Legend, and he interviewed and hired Jenkins in 2006. Buchanan did not make any references to Jenkins' age during the interview. Dkt. # 76-3, at 11. As Residence Director, Jenkins was the highest ranking employee on site at Green Tree, but policies applicable to Green Tree were made by Legend. Id. at 14. On June 15, 2009, Legend conducted an annual performance evaluation of Jenkins, and the evaluation was generally very positive. The reviewer noted that safety and training at Green Tree needed improvement, and that Jenkins needed to stabilize leadership of the nursing staff to help the facility operate within guidelines issued by Legend and the State of Oklahoma. Dkt. # 76-11. The evaluation referred to injuries suffered by employees of Green Tree as the basis for these comments, because Legend was concerned about the number of workplace injuries and workers' compensation claims. Id. at 4.

On September 19, 2009, a fire occurred at Green Tree and the Sand Springs Fire Department and the Sand Springs Police Department responded to the situation. The fire was reported to the fire department at 11:03 a.m. but the facility was not evacuated until 11:39 a.m., and fire department personnel described the scene as "chaotic." Dkt. # 76-12. Following the fire, a complaint was made to the Oklahoma State Department of Health (OSDH), and OSDH went to Green Tree on October 5, 2009 to investigate the complaint. OSDH issued a notice of deficiency to Green Tree on November 10, 2009, and Legend responded to the notice by preparing a plan of correction to OSDH. The plan of correction provides:

> In an effort to ensure the deficient practice will not recur, the Residence Director, or designee will conduct routine fire drills and evaluate each resident's ability to evacuate the residence. Should any resident be unable to evacuate from second or third floor safely, they will be relocated to the first floor."

Id. at 4. OSDH accepted the plan of correction. Jenkins' signature appears on the form, but she claims that Matthew Thornton, the Vice President of Operations for Legend, and Theresa Lewis, a corporate nurse, drafted the plan of correction and forged her signature. Dkt. # 109-18, at 17. Thornton claims that Jenkins participated in the drafting of the plan of correction. Dkt. # 76-2, at 14.

On December 16, 2009, OSDH conducted a follow-up survey to see if the deficiencies had been corrected, and it found that the same deficiencies still existed. OSDH notified Green Tree that it would seek to impose a penalty of $200 per day dating back to September 19, 2009. Thornton investigated OSDH's finding of deficiencies and he came to believe that Jenkins falsified records documenting fire drills at Green Tree. He testified in his deposition that he interviewed Green Tree employees and learned that Jenkins was not personally conducting fire drills at the facility. Dkt. # 76-2, at 13. Instead, the maintenance director, Dennis Roberts, was supervising fire drills, and he determined that records of fire drills submitted to Legend and OSDH were falsified. Id. at 13-14. Thornton claims that plaintiff signed forms documenting when fire drills occurred, but she was not present in the building and could not have supervised the fire drills. Id. at 16. Jenkins told Thornton that she was not present for the fire drills, but Thornton believed that it was a violation of company policy for Jenkins to sign the form if she did not conduct the fire drill. Id. Neither Legend nor Green Tree have any written rules requiring that the Residence Director personally supervise a fire drill or that the fire drill form must be signed by the person conducting the fire drill. However,

3

Thornton did not document who he interviewed as part of his investigation, or take written statements from the persons he interviewed.[2] Dkt. # 109-15, at 22.

Thornton terminated Jenkins' employment on January 6, 2010. The termination letter states that Jenkins was terminated for cause, because she allegedly distorted facts concerning the performance of fire drills and falsified records. Dkt. # 76-15. No other reason is stated in the letter for Jenkins' termination. Defendants now argue that Thornton had four reasons for terminating Jenkins' employment:

> First, Matthew Thornton terminated the plaintiff for failure to implement and execute all of the requirements in the Plan of Correction, including the failure to ensure that fire drills were conducted in accordance with state statute. Second, Matthew Thornton terminated the plaintiff for failure to ensure that each resident had been evaluated and assessed to ensure that a written evacuation plan was included in each patient's care plan. Third, Matthew Thornton terminated the plaintiff for failure to ensure that there was documentation showing that staff members were trained on evacuation procedures before they started working. Fourth, Matthew Thornton terminated plaintiff for submitting what he believed to be falsified records regarding fire drill evacuation procedures.

Dkt. # 76, at 17. Jenkins testified in her deposition that the reason stated in the termination letter - the alleged falsification of fire drill records - could not have been the real reason for her termination, because Thornton was already on notice that she was not personally supervising the fire drills and that there was no company policy requiring her to personally participate in a fire drill. Dkt. # 109-18, at 9; Dkt. # 109-29. Adam Bechtold was named interim director of Green Tree after Jenkins'

---

[2] Plaintiff repeatedly requested discovery as to who Thornton interviewed as part of his investigation, and Thornton either could not remember or would not provide the information. Kathy Black, a current Legend employee, testified in her deposition that in March 2012 Thornton asked to speak to all current employees who were employed when Jenkins was fired. Dkt. # 109-19, at 3. Thornton asked if he spoke to the employees about fire drills in December 2009, and Black recalled a casual meeting where the issue was discussed. Id. at 3-4. Black told Thornton that she remembered telling him in 2009 that Jenkins did order fire drills to be conducted in December 2009. Id. at 4-5.

4

termination, and Regina Brown also assisted with some of Jenkins' former duties. Dkt. # 76-2, at 7. Bechtold was approximately 27 years old and Brown was approximately 53 years old. Dkt. # 109-24, at 6.

Jenkins believes that Thornton harbored a bias against her due to her age. Thornton called Jenkins "Grandma" on several occasions and she asked him to stop using that term. Dkt. # 109-18, at 3; Dkt. # 109-30. Thornton continued to call her "Grandma." In the weeks before Jenkins' termination, several employees heard Thornton comment on Jenkins' age in a demeaning manner.[3] Linda Trent heard Thornton say that Jenkins was "too old and she was so old she should be a resident at the facility." Dkt. # 109-26. Thornton asked a campus director, Melva Noakes, if she thought that Jenkins was losing her memory of "just getting too old" for her job. Dkt. # 109-27. Carol Ridgeway later told Noakes that Thornton wanted to fire Jenkins, and Ridgeway did not feel right about terminating Jenkins' employment. Id. Thornton also allegedly ordered the termination of other employees because of the employees' age, and he made remarks concerning the age of certain employees. Thornton instructed Ridgeway to terminate Noakes' employment on March 31, 2010, and Ridgeway told Noakes that Thornton felt that Noakes was "too old and too slow." Dkt. # 109-27. Thornton also directed Ridgeway to fire the director of the Council Road facility, Anita Burkhalter, because she was "too old and too slow." Dkt. # 109-16, at 2. During Noakes'

---

[3] In their reply, defendants argue that many of the statements cited by plaintiff are inadmissible hearsay. However, defendants were aware that plaintiff would likely be relying on these statements when they filed their motion for summary judgment, and defendants chose not to challenge the admissibility of the statements in their motion. The Court declines to consider an argument raised for the first time in a reply. See United States v. Harrell, 642 F.3d 907, 918 (10th Cir. 2011) ("arguments raised for the first time in a reply brief are generally deemed waived"). The Court also notes that hearsay issues can often be cured, and the Court declines to preliminarily rule on the admissibility of evidence at trial.

5

employment, Thornton ordered her to fire a maintenance man, Royce O'Dell, and told her that "you just need to get someone younger because he's been here a long time and he's probably just too old to do the job." Dkt. # 109-28. Willena Ferguson was employed by Legend and Thornton referred to her as "old woman." Dkt. # 109-30. Thornton denies making any age-related comments about Jenkins and other employees. Dkt. # 76-2, at 6.

On January 21, 2010, OSDH filed an administrative action against Green Tree for the violations found during the October 5, 2009 inspection. Dkt. # 109-6. The violations at issue did not specifically concern the alleged failure to perform fire drills, and Green Tree did not disclose that it had terminated Jenkins for allegedly falsifying fire drill records. OSDH alleged that the building housing Green Tree's residents was improperly designed and that residents housed on the second and third floors were physically unable to evacuate the building. Dkt. # 109-6, at 3. The Court has reviewed the transcript of the administrative hearing. The adequacy of Green Tree's safety training was an issue at the hearing, but the Court could find no testimony concerning the allegedly falsified fire drill records. Dkt. # 109-15. The administrative law judge determined that OSDH had not met its burden of proof and Green Tree was not penalized. Dkt. # 109-13.

On April 27, 2010, Jenkins filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that she the victim of age discrimination. Dkt. # 109-31. Jenkins filed this case on May 6, 2011, alleging an ADEA claim and a Burk tort against Legend and Green Tree. Dkt. # 1. While this case was pending, Legend's attorney sent a letter to former corporate nurse Lewis, because Lewis had communicated with plaintiff's attorney, Amber Hurst. Dkt. # 109-36. The letter suggested that Lewis was violating her severance agreement and Legend's attorney asked Lewis to contact him "so that we can discuss the effect such conduct has upon your

severance agreement." Dkt. # 109-36. On May 14, 2010, Legend's attorney also sent a letter to Ferguson stating:

> I believe you have also taken action to precipitate a number of EEOC complaints against the company. Legend is perfectly willing, and indeed eager, to defend each of these claims on their merits. I am confident that the company will be vindicated with regard to each complaint. However, you should be aware that, if Legend is ultimately the prevailing party in some or all of these actions, it will pursue both the complaining party and you for its attorney's fees, costs, and other damages that may result from your malicious use of the litigation process, if the evidence indicates that you caused or created these complaints or suits.

Dkt. # 109-37. Legend denies Jenkins' implication that it has sent threatening letters to any potential witness. Dkt. # 127, at 10-11,

**II.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there

is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Defendants argue that they are entitled to summary judgment on plaintiff's age discrimination claims, because plaintiff cannot establish a prima facie case of discrimination and there is no evidence showing that their legitimate, non-discriminatory reason for terminating her employment was pretextual. Dkt. # 76, at 23-26. Plaintiff responds there are factual disputes concerning the legitimacy of defendants' stated reason for terminating her employment and circumstantial evidence shows that Thornton harbored an age bias, and that these are genuine disputes as to a material fact precluding summary judgment.

Plaintiff asserts that defendants terminated her employment in violation of the ADEA. Plaintiff has produced no direct evidence of age discrimination and, when reviewing an age discrimination claim based on circumstantial evidence, the Court must apply the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, the plaintiff bears the initial burden to establish a prima facie case of discrimination. Sanders v. Southwestern Bell Telephone, L.P., 544 F.3d 1101, 1105 (10th Cir. 2008). To establish

a prima facie case, a plaintiff must show: (1) that she is within the protected age group; (2) that she suffered an adverse employment action; (3) that she was qualified for the position; and (4) she was treated less favorably than others not in the protected class. Jones v. Oklahoma City Public Schools, 617 F.3d 1273, 1279 (10th Cir. 2010). If the plaintiff meets her burden, the employer must "come forward with some legitimate, non-discriminatory reason for the adverse employment action." Hinds v. Sprint/United Management Co., 523 F.3d 1187, 1195 (10th Cir. 2008). If the employer produces a legitimate, non-discriminatory reason for its decision, the burden shifts to the plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." Rivera v. City & County of Denver, 365 F.3d 912, 920 (10th Cir. 2004). The mixed-motive analysis established in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), does not apply to claims under the ADEA, and a plaintiff asserting an age discrimination claim under the ADEA retains the "burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." Gross v. FBL Financial Servs., Inc., 557 U.S. 167, 177 (2009). The Tenth Circuit has found that Gross was consistent with existing Tenth Circuit precedent, and a plaintiff asserting an ADEA claim has the burden to prove that "age was the factor that made a difference," even if age was not the sole motivating factor for an employer's decision. Jones, 617 F.3d at 1277.

There is no dispute that plaintiff is a member of the protected class due to her age, that she suffered an adverse employment action, and that plaintiff was replaced by a younger person. However, defendants argue that they terminated plaintiff because she was not performing her job satisfactorily, and that plaintiff cannot establish a prima facie case of age discrimination. Plaintiff has produced sufficient evidence to show that she was qualified for her position and was performing

her job satisfactorily prior to her termination. Plaintiff's performance evaluation from June 2009 shows that defendants identified several areas where plaintiff could improve her job performance, but they found that plaintiff was generally meeting their expectations and her performance was satisfactory. Dkt. # 76-11. Plaintiff also worked for Green Tree for over three years and this supports plaintiff's argument that she was qualified for her job. English v. Colorado Dep't of Corrections, 248 F.3d 1002, 1008 (10th Cir. 2001) (length of the plaintiff's employment may be used at the prima facie case stage to show that a plaintiff was qualified for his or her job). Defendants argue that plaintiff falsified documents and did not ensure that Green Tree complied with fire safety requirements, but this goes to defendants' actual reason for terminating plaintiff's employment and this is not the appropriate inquiry when determining if plaintiff has established a prima facie case of discrimination. EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1193 (10th Cir. 2000). The Court will consider defendants' argument at the second and third stages of the McDonnell Douglas analysis, but plaintiff has produced sufficient evidence to show that she was qualified to perform her former job as Residence Director of Green Tree. Plaintiff was replaced by a younger worker and has produced evidence that Thornton made demeaning age-related comments about her, and this is sufficient to establish the final element of plaintiff's prima facie case.

Defendants claim that plaintiff was terminated, inter alia, for falsifying fire records, and this is a legitimate, non-discriminatory reason for terminating plaintiff's employment. Dkt. # 76, at 26. "The defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason for the termination; the defendant does not at this stage of the proceeding need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need prove that the reasoning was applied in a nondiscriminatory fashion." EEOC v. Flasher Co.,

10

Inc., 986 F.2d 1312, 1316 (10th Cir. 1992). The Tenth Circuit has described the defendant's burden at this stage of the proceedings as "exceedingly light." Zamora v. Elite Logistics, Inc., 478 F.3d 1160, 1165 (10th Cir. 2007). Although plaintiff claims that defendants' stated reason was not the true reason for her termination, defendants have come forward with a legitimate, non-discriminatory reason for terminating plaintiff's employment and the burden shifts to plaintiff to show that this reason is pretextual.

At this stage of the proceeding, the burden shifts to plaintiff to show that defendants' explanation for terminating plaintiff's employment is pretextual. Plotke v. White, 405 F.3d 1092,1099 (10th Cir. 2005); Salguero v. City of Clovis, 366 F.3d 1168, 1176 (10th Cir. 2004). "A plaintiff demonstrates pretext by showing . . . that the employer's proffered explanation is unworthy of credence." Stinnett v. Safeway, Inc., 337 F.3d 1213, 1218 (10th Cir. 2003) (quoting Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir. 1994)). A plaintiff typically attempts to satisfy her burden by "revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" Mackenzie v. City & County of Denver, 414 F.3d 1266, 1278 (10th Cir. 2005) (quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)). A plaintiff's "mere conjecture" that the employer's explanation is pretext is not a sufficient basis to deny a motion for summary judgment. Branson v. Price River Coal Co., 853 F.2d 786, 772 (10th Cir. 1988). In the context of an age discrimination claim, the burden of persuasion remains with plaintiff at all times to show that age was the but-for cause of plaintiff's termination. Smith v. City of Allentown, 589 F.3d 684, 691 (10th Cir. 2009).

Considering the evidence in a light most favorable to plaintiff, the Court finds that a reasonable jury could find defendants' legitimate, non-discriminatory reason unworthy of belief. Plaintiff has produced evidence tending to show that defendants' stated reason for terminating her employment is factually unsupported and not the result of a good faith investigation. Plaintiff testified in her deposition that Thornton already knew that she was not personally supervising fire drills, but that fire drills were actually being conducted at Green Tree. Black's testimony also supports a finding that plaintiff directed employees of Green Tree to conduct a fire drill in December 2009 and that Black told Thornton about the planned fire drill before he terminated plaintiff's employment. Dkt. 109-19, at 3-5. Thornton believes that plaintiff was required to personally supervise the fire drill and that she could not sign the fire drill forms if she was not present for the fire drill, but it is not clear that these were actual company policies. Thornton did not keep records of his investigation and he did not identify who he interviewed until March 2012. The context of Black's deposition testimony also suggests that Thornton does not have a clear recollection of the events leading up to plaintiff's termination. Thus, it is not clear that defendants had a reasonable basis to believe that plaintiff falsified records and it is possible that defendants acted with some other motivation when it terminated plaintiff's employment. Thornton's statements concerning the age of Jenkins and other employees support an inference that age was the true motivation for Thornton's decision to fire plaintiff. Thornton referred to Jenkins as "Grandma," even though she had advised Thornton that she found this offensive. At least one employee heard Thornton say that plaintiff should be a resident at Green Tree, and he made at least two statements suggesting that he viewed plaintiff as "too old" to work. There is also evidence that he ordered the termination of other employees solely because of their age. Thornton denies making any of these statements, but the

12

credibility of witnesses is a matter for the jury and the Court cannot disregard this evidence at the summary judgment stage.[4] Plaintiff has presented sufficient evidence from which a jury could find defendants' legitimate, non-discriminatory reason for terminating her employment unworthy of belief, and defendants are not entitled to summary judgment on plaintiff's ADEA claim.

Plaintiff has also alleged a Burk tort against defendants for wrongful termination of her employment in violation of an Oklahoma public policy.[5] The elements of a Burk tort are:

> (1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the Oklahoma public policy.

Vasek v. Bd. of County Commr's of Noble County, Oklahoma, 186 P.3d 928, 932 (Okla. 2008). There is no dispute that plaintiff was discharged and that she was an at-will employee. Age discrimination violates the public policy of Oklahoma. Saint v. Data Exchange, 145 P.3d 1037 (Okla. 2006). Based on the Court's analysis of plaintiff's ADEA claim, the Court finds that plaintiff has produced sufficient evidence that age may have been a significant factor in her termination. The Tenth Circuit, interpreting Oklahoma law, has stated that a "*Burk* tort claim is available for age

---

[4] The Court also notes its concern that defendants sent potentially threatening letters to at least two witnesses who may offer testimony favorable to plaintiff. The Court will not treat the letters as evidence for or against the existence of any fact at this stage of the case, but the letters could have some relevance to show that defendants acted with a discriminatory intent.

[5] This case was filed on May 6, 2011. The Oklahoma Legislature amended the Oklahoma Anti-Discrimination Act to eliminate the Burk tort, but the amendment did not become effective until November 1, 2011. See OKLA. STAT. tit. 25, § 1350(A) ("A cause of action for employment-based discrimination is hereby created and any common law remedies are hereby abolished."). However, the statute is not retroactively applicable and plaintiff may proceed with a Burk tort. See Shull v. Reid, 258 P.3d 521, 524 (Okla. 2011) (statutory amendments affecting substantive rights operate prospectively only unless the legislature "clearly expresses a contrary intent.").

13

discrimination, notwithstanding the existence of the federal statutory remedy under the ADEA." Medlock v. United Parcel Service, Inc., 608 F.3d 1185, 1188 n.1 (10th Cir. 2010). Plaintiff may be able to recover under Burk and subsequent cases, and defendants' request for summary judgment on plaintiff's state law wrongful termination claim should be denied.[6]

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment and Brief in Support (Dkt. # 75) is **denied**.

**DATED** this 21st day of May, 2012.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[6] Defendants also argue that plaintiff failed to mitigate her damages, and they argue that this is a complete defense to plaintiff's claims. However, defendants acknowledge that plaintiff looked for work after her termination and eventually chose to retire after a short term of employment at another long term care facility. Dkt. # 76, at 18. Plaintiff does not dispute that she retired, but argues that mitigation of damages is not a complete defense and there is a genuine dispute of material fact as to when her damages for lost income and benefits stopped accruing. Dkt. #109, at 35-36. Plaintiff is correct that a dispute as to her damages does not show that defendant is entitled to summary judgment and, in any event, there is clearly a genuine dispute as to the amount of lost income and benefits she may be able to recover at trial. The parties are encouraged to confer and reach an agreement on this issue before trial.

14